FILED
CLERK, U.S. DISTRICT COURT
10/25/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: DVE DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

March 2023 Grand Jury

UNITED STATES OF AMERICA,

Plaintiff,

v.

TRAVIS RILEY,

Defendant.

No. 8:23-cr-00147-FWS

I N D I C T M E N T

[18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1344(2): Bank Fraud; 18 U.S.C. § 1349: Attempt Liability; 18 U.S.C. § 220(a)(2): Offering Illegal Remunerations for Referrals to Clinical Treatment Facilities; 18 U.S.C. § 982: Criminal Forfeiture]

The Grand Jury charges:

COUNTS ONE THROUGH SEVEN

[18 U.S.C. §§ 1343, 1349]

A. INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. Defendant TRAVIS RILEY was a resident of Orange County, California.

2. Defendant RILEY, together with others known and unknown to the Grand Jury, owned and controlled the following business entities, among others: Mira Coast Behavioral Inc., an addiction treatment

business headquartered in Newport Beach, California; New Essence Recovery, LLC, a drug addiction treatment business headquartered in Irvine, California; UMNPA, LLC, also known as United Mission for Nonprofits of America, which held itself out to be a mental health and substance abuse treatment business headquartered in Costa Mesa, California; and New Essence 501C3 Charity, which held itself out to be a charitable business providing services for the military community headquartered in Yorba Linda, California.

The Paycheck Protection Program

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic. One form of assistance provided by the CARES Act was the authorization of United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). PPP loan proceeds were required to be used by the business to pay certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities.

4. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the applicant business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. Such certifications required the applicant to affirm that "The [PPP loan] funds will be used to retain workers and maintain payroll or make

mortgage interest payments, lease payments, and utility payments," and that the "loan proceeds will be used only for business-related purposes as specified in the loan application" and consistent with the PPP rules. The authorized representative of the applicant was also required to certify that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in material respects," and "I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

5. In the PPP loan application, the applicant was required to state, among other things, the business's: (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses, including federal tax filings and bank account records.

6. A small business's PPP loan application would be received and processed by a participating lender approved by the Small Business Administration ("SBA"). If a PPP loan application was approved, the participating lender would fund the PPP loan using its own monies, which were guaranteed by the SBA.

B. <u>THE SCHEME TO DEFRAUD</u>

7. Beginning no later than in or around May 2020 and continuing until at least in or around June 2021, in Orange County, within the Central District of California, and elsewhere, defendant RILEY, and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, executed, and

attempted to execute a scheme to defraud the SBA and financial institutions as to material matters, and to obtain moneys, funds, assets, and other property owned by and in the custody and control of the SBA and financial institutions by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

8. The fraudulent scheme operated, in substance, as follows:

a. Defendant RILEY recruited drug-addicted patients, employees in their drug treatment business, and other associates ("the Nominee Applicants") to be falsely identified on PPP applications as owners and operators of businesses ("the Nominee Businesses"), including businesses that did not conduct any actual business operations. Defendant RILEY then submitted and caused to be submitted PPP applications for the Nominee Businesses, on which he forged the digital signatures of the respective Nominee Applicants. Defendant RILEY also submitted and caused to be submitted PPP applications for businesses held in his own name.

b. In support of the above PPP applications, defendant RILEY and others known and unknown to the Grand Jury made, and caused to be made, false and fictious statements, including:

i. Falsely identifying the Nominee Applicants as owners or operators of the businesses;

ii. Falsifying the number of employees to whom the respective companies paid wages;

iii. Providing counterfeit and falsely altered bank statements, including for bank accounts that did not in fact exist;

iv. Providing counterfeit tax filings, including Quarterly Federal Tax Return Forms 940 and 941 that were never filed

with the Internal Revenue Service, and which bore the forged signatures of tax preparers who did not in fact prepare the forms or authorize defendant RILEY to list their names and identification numbers on the forms; and

v. Falsely certified that the PPP loans would be used for permissible business purposes, when the funds were largely diverted for defendant RILEY's lavish lifestyle, such as the purchase of a $226,000 Lamborghini car, jewelry, travel, and luxury retail goods.

9. In furtherance of the scheme, defendant RILEY submitted and caused the submission of at least 29 fraudulent PPP applications seeking more than $7.8 million in total funds, resulting in approximately $3,210,266 in actual losses to the United States government.

C. USE OF THE WIRES

10. On or about the dates set forth below, in Orange County, within the Central District of California, and elsewhere, for the purpose of executing and attempted to execute the above-described scheme to defraud, defendant RILEY transmitted and caused the transmission of the following items by means of wire and radio communication in interstate commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| ONE | 5/28/2020 | Submission of application for $208,749 PPP loan on behalf of business Care Trust |
| TWO | 5/29/2020 | Submission of application for $277,285 PPP loan on behalf of New Essence 501C3 Charity |

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| THREE | 6/15/2020 | Submission of application for $279,476 PPP loan on behalf of Ports LLC |
| FOUR | 8/7/2020 | Submission of application for $289,954 PPP loan on behalf of Hands Up Initiative (attempt) |
| FIVE | 2/14/2021 | Submission of application for $399,532 PPP loan on behalf of Veterans Outreach Assistance Trust |
| SIX | 2/23/2021 | Wire transfer of $367,882 to J.P. Morgan Chase Bank account ending in numbers 9003, based on the submission of application for PPP loan in that amount on behalf of CI2I LLC |
| SEVEN | 3/1/2021 | Submission of application for $367,477 PPP loan on behalf of Ultio Recovery Centers for Change (attempt) |

COUNTS EIGHT AND NINE

[18 U.S.C. § 1344(2)]

A. INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. The Grand Jury re-alleges paragraphs 1 through 6 of Count One of this Indictment here.

2. Cross River Bank and California International Bank were each financial institutions insured by the Federal Deposit Insurance Corporation.

B. THE SCHEME TO DEFRAUD

3. Beginning no later than in or around June 2020 and continuing until at least in or around June 2021, in Orange County, within the Central District of California, and elsewhere, defendant RILEY and others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to obtain moneys, funds, credits, assets, and other property owned by and in the custody and control of Cross River Bank and California International Bank by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

4. The fraudulent scheme operated, in substance, as described in paragraphs 8 and 9 of Count One of this Indictment.

C. EXECUTIONS OF THE SCHEME

5. On or about the dates set forth below, in Orange County, within the Central District of California, and elsewhere, defendant RILEY, together with others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and willfully executed the

fraudulent scheme described above by committing and willfully causing others to commit the following acts:

| COUNT | DATE | ACT |
|---|---|---|
| EIGHT | 6/10/2020 | Submission of application for $446,847 PPP loan to Cross River Bank on behalf of Sober Services LLC |
| NINE | 5/24/2021 | Submission of application for $446,847 PPP loan to California International Bank on behalf of Mira Coast Behavioral, Inc. |

COUNT TEN

[18 U.S.C. § 220(a)(2)]

On or about July 8, 2021, in Orange County, California, within the Central District of California, defendant TRAVIS RILEY knowingly and willfully offered to pay remuneration, including a kickback, bribe, and rebate, directly and indirectly, overtly and covertly, in cash and in kind, (1) to induce a referral of an individual to a recovery home and clinical treatment facility, and (2) in exchange for an individual using the services of a recovery home and clinical treatment facility, each with respect to services covered by a health care benefit program, in and affecting interstate commerce, namely, defendant RILEY agreed to pay a person defendant RILEY believed was a patient recruiter, but who was, in fact, a confidential source working with the Federal Bureau of Investigation (the "CS"), a fee of approximately $2,000 per patient referred by the CS to receive treatment at clinical addiction treatment facilities operated by defendant RILEY.

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Nine of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

a. All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

c. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has

///

///

been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/

Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office